PATRICK D. MONSERRATE, as District Attorney of Broome County, Appellant, v UPPER COURT STREET BOOK STORE, INC., et al., Respondents.

Third Department, May 25, 1978

## APPEARANCES OF COUNSEL

*Patrick D. Monserrate, pro se, District Attorney (Robert S. Rose* of counsel), for appellant.

*David Gerald Jay* for Upper Court Street Book Store, Inc., respondent.

*Kenneth P. Ray* for Michael D. Gelety, Jr., respondent.

*George J. Camino* for Loji Sales, Inc., respondent.

## OPINION OF THE COURT

HERLIHY, J.

The facts are not disputed. In November of 1976, a police officer in civilian clothes, who did not disclose his official identity, entered each of the defendants' business establishments and purchased two or three magazines and one article or device. All of the establishments were advertised as adult bookstores and the items purchased appeared to the officer to constitute hard-core pornography. On December 3, 1976, the investigator applied to the County Judge of Broome County for warrants authorizing searches of each bookstore and the seizure of property described in the applications.

The County Judge issued search warrants which authorized police officers to search each store "for the following property 'obscene material', as defined in § 235.00 of the Penal Law of the State of New York and the promotion of which is prohibited under Article 235 of such law, including all copies of the publications listed in Schedule A, attached hereto together with any other similar obscene material authorized by the Court to be seized during the execution of this warrant." A Schedule "A" which listed by title all the magazines purchased in November was attached to the warrants.

On December 4, 1976 at about 10:00 A.M., police officers entered all seven of the bookstores and began removing cellophane wrappers from magazines. The County Judge went to the Upper Court Street Book Store at 10:30 A.M. and continued from there to visit the other six stores, ending his tour about 5:00 P.M. The Judge viewed the items on display and orally authorized the seizure of certain magazines, books, films and articles in addition to those listed on Schedule A. Approximately 16,000 books, magazines, tapes, devices and films were seized. The police coded the items and entered the codes on a continuation of the schedules attached to the search warrants. The seized materials were boxed and trucked to State Police Zone C Headquarters in Sidney, New York, where the items were identified and the title or description written opposite the corresponding code entry on the schedules. On December

15, 1976, the process had been completed and the police returned the schedules to the County Judge. On December 16, 1976, orders to show cause for a preliminary injunction were signed, returnable at the Special Term of Supreme Court to be held in Broome County on January 11, 1977. This was pursuant to the CPLR 6330 proceedings commenced by the District Attorney.

CPLR 6330 was declared constitutional in *Redlich v Capri Cinema* (43 AD2d 27, app dsmd 33 NY2d 974); *Vergari v Pierre Prods.* (43 AD2d 950), and *Incorporated Vil. of Lynbook v United Artists Corp.* (75 Misc 2d 124). The injunctive relief set forth in the predecessor statute to CPLR 6330 was upheld in *Brown v Kingsley Books* (1 NY2d 177), which the United States Supreme Court affirmed in *Kingsley Books v Brown* (354 US 436). The constitutionality of section 235.00 of the Penal Law has been upheld in *People v Heller* (33 NY2d 314, cert den 418 US 944).

■ Search and seizure standards in obscenity cases are designed to prevent general warrants and insure that Judges, not policemen, decide what is seized *(Marcus v Search Warrant,* 367 US 717, 724). Discretion over the things to be seized is exercised properly only by an impartial Magistrate.

■ The procedure adopted by the County Court in visiting the various stores and making a personal inspection is not required by the statute and is novel and should not be lightly disregarded. The impartial Judge rather than the enforcement authorities was exercising his judgment as to whether the exhibits previously confiscated by the police, but left in each store, were obscene in accordance with section 235.00 of the Penal Law. Of course, it sounded somewhat exaggerated that any person could decide in such a short period of examination as to whether approximately 16,000 items seized were obscene, but in many instances there was a repetition of the same items in different stores. Inasmuch as the court's inspection did not constitute a final determination as to obscenity, we are of the opinion that the method here inaugurated was within the intent and meaning of the statute and is inapposite to the factual situation in *Marcus v Search Warrant (supra),* and further strengthens the procedure found adequate in *Kingsley Books v Brown (supra),* which was an appeal from a New York decision.

CPLR 6330 does not authorize or require a search and seizure or any other particular method of obtaining evidence.

The evidence need not be attached to the complaint and the matter of evidence is simply that ordinarily incident to an injunction proceeding. Whether or not there has been a proper seizure of evidence in a criminal proceeding or the proper execution of a search warrant would ordinarily be immaterial and irrelevant in a civil action where the items seized are simply evidence and not the subject of the action, per se.

We accordingly conclude that the statute being constitutional, the procedure adopted in this action by the County Judge amply protected the rights of the defendants in corralling the materials and items used in an application for an injunction and subject to a hearing as to whether such materials and items come within the definition of "obscenity" as defined in section 235.00 of the Penal Law.

With reference to the search warrant, Schedule A thereof as issued by the court listed items designated as "A", "B" and "C". Following the search and inspection by the County Judge the police department coded the various other items and thereafter placed them on a continuation of the schedule attached to the search warrant and returned them to the Judge. In other words, when the warrant was presented to the Judge following the raids and his inspection, instead of it being "A", "B" and "C" there were many other items which had been attached.

The warrant, when issued, as pertinent stated: "[I]ncluding all copies of the publications listed in Schedule A attached hereto, together with any other similar obscene material authorized by the court to be seized during the execution of this warrant."

█ Since the warrants contemplated the Judge's tour of the bookstores and the Judge actually viewed the items and found them to be obscene, it would seem to be exalting form over substance to hold that a new search warrant would have to be issued for the additional items. As in *Heller v New York* (413 US 483, *supra),* here the Judge examined the items and materials before ordering them seized and before any adversary hearing had taken place. The purpose of the search warrant is to provide a judicial determination that probable cause exists to search an establishment and seize specifically designated items, before the police can act. This was done in this case, and therefore no impediment should exist because the Judge added items to warrants during their execution.

Regardless of the legality of the search and seizure and the

eventual admission of the items seized in evidence, the suppression of such evidence does not affect the validity of the complaints herein or result in a preliminary basis for a dismissal of the complaints (see *Phillips v Kantor & Co.,* 31 NY2d 307; cf. *Matter of Mastrianni,* 55 AD2d 784). In the present case the dismissal of a portion of the complaint was error.

■ Furthermore, the court erred in entertaining the motion to suppress the evidence and in directing a return to the respondents. CPL 710.70 (subd 3) provides that the exclusive method of challenging the admissibility of evidence upon the ground of an illegal search and seizure is a motion pursuant to CPL article 710 (cf. CPLR 3103). Assuming that such a motion could have been made in the Supreme Court for Broome County (cf. CPL 710.50; *People v Gatti,* 16 NY2d 251), the record establishes that the respondents had no reasonable cause to believe that a criminal action would be brought against them wherein the evidence would be offered as proof. Accordingly, the respondents were not authorized pursuant to CPL 710.20 (art 710) to move for suppression of the subject evidence and recovery of the property would be by an appropriate plenary proceeding (see *People v Skipwith,* 22 AD2d 960; cf. *Boyle v Kelley,* 42 NY2d 88, 91) in the present action pursuant to CPLR 6330 (subd 2).

Upon the present record the determination of Special Term that the evidence should be suppressed and/or that the evidence should be returned to the respondents prior to a determination on the merits of the action pursuant to CPLR 6330 was error as a matter of law.

The order should be modified, on the law, by striking so much of the first and second decretal paragraphs which suppressed as evidence any items and directs the return of any items to the defendants, and by striking the third decretal paragraph in its entirety, and, as so modified, should be affirmed, without costs, and the matter should be remitted to Special Term with instructions to promptly proceed to a final determination.

SWEENEY, J. P., KANE, STALEY, JR., and LARKIN, JJ., concur.

Order modified, on the law, by striking so much of the first and second decretal paragraphs which suppressed as evidence any items and directs the return of any items to the defendants, and by striking the third decretal paragraph in its

entirety, and, as so modified, affirmed, without costs, and matter remitted to Special Term with instructions to promptly proceed to a final determination.